United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GOLDEN STATE ORTHOPAEDICS, INC.

    Plaintiff,

    v.

HOWMEDICA OSTEONICS
CORPORATION d/b/a STRYKER
ORTHOPAEDICS,

    Defendant.
_____/

No. C 14-3073 PJH

**ORDER RE MOTION TO DISMISS/
TRANSFER/STAY**

Defendant's motion for an order dismissing or transferring the above-entitled action, or in the alternative, abstaining from the case or staying it, came on for hearing before this court on October 30, 2014. Plaintiff appeared by its counsel Erik Anderson and Jeffrey Brown, and defendant appeared by its counsel Robert Milligan. Having read the parties' papers and carefully considered their arguments and the relevant legal authorities, the court hereby DEFERS ruling on the motion to dismiss/transfer, DENIES the motion for abstention, and STAYS the case as follows.

**BACKGROUND**

Plaintiff Golden State Orthopaedics, Inc. ("GSO") is a California-based distributor of orthopedic medical products and surgical instruments. Defendant Howmedica Osteonics

Corporation d/b/a Stryker Orthopaedics ("Stryker") is a New Jersey-based seller of orthopedic medical products and surgical instruments, and operates in numerous California counties.

On May 30, 2014, Stryker filed suit in the District of New Jersey against five former employees, California citizens who worked exclusively in California when they worked for Stryker – Brett Sarkisian ("Sarkisian"), Bryan Wyatt ("Wyatt"), Taylor Smith ("Smith"), Keegan Freeman ("Freeman"), and Michael Nordyke ("Nordyke"). Also named as a defendant was DePuy Orthopaedics, Inc. ("DePuy"), which makes/sells/distributes orthopedic products. See Howmedica Osteonics Corp. v. Sarkisian, C-14-3449 (D.N.J.)

In the original complaint in that case, Stryker alleged that the former employees breached employment agreements and their duty of loyalty to Stryker by soliciting Stryker's clients on behalf of DePuy, and that DePuy engaged in unfair competition, corporate raiding, and interference with contract and prospective economic advantage.

On July 7, 2014, GSO filed the complaint in the present action. GSO alleges that Stryker violated California Business and Professions Code § 16600 by requiring its California employees to sign employment agreements containing provisions designed to restrain those employees' ability to compete after the termination of his/her employment with Stryker.

The employment agreements allegedly signed by Sarkisian, Wyatt, Smith, Freeman, and Nordyke all provide (with the exception of the Nordyke agreement) that any litigation with Stryker will take place exclusively in the State of New Jersey; that any action relating to the agreement may be brought in the federal District of New Jersey (assuming there is subject matter jurisdiction); and that the Agreement will be construed and enforced in accordance with the laws of New Jersey. Nordyke's agreement provides for Michigan law and Michigan as a forum (though Stryker sued him in New Jersey).

In addition to the § 16600 cause of action, GSO asserts a claim of unlawful, unfair, and fraudulent business acts and practices, under Business & Professions Code § 17200, based largely on the alleged violation of § 16600; and a claim for declaratory relief under

2

California Code of Civil Procedure § 1060, et seq. "and the common law of the State of California, as well as under any federal statutes recognizing such relief."

GSO seeks declaratory relief, including "a judicial determination that Striker's illegal restrictive covenants in the employment agreements executed by its California-based employees (including Sarkisian and Wyatt) are unlawful, illegal, void and unenforceable under . . . section 16600" and "constitute an unfair business practice under . . . section[ ] 17200;" an order enjoining Stryker from enforcing "the challenged contractual provisions set forth in the employment agreements executed by Stryker's California-based employees;" "any and all proper monetary recompense, whether as damages or restitution[;]" and "costs of suit."

On July 9, 2014 (two days after the complaint in the present action was filed) Stryker filed a motion for leave to file a first amended complaint ("FAC") in the New Jersey case, seeking to add GSO as a defendant. Stryker asserted that it had only recently learned that the five employees were all employed by GSO <u>and</u> DePuy, and that GSO and DePuy had "raided" Stryker's employees and had acted in concert with the five employee defendants to solicit Stryker customers.

The New Jersey court granted the motion on October 15, 2014, and Stryker filed the FAC on October 16, 2014. The Stryker FAC alleges that DePuy and GSO engaged in "calculated and deliberate raiding of Stryker's Orthopaedic Reconstructive ('Recon') sales force . . . in and around Bakersfield, California, and Fresno, California," Stryker FAC ¶ 1; and that the five defendant employees breached their contracts with Stryker and their duty of loyalty to Stryker, id. ¶ 5.

Stryker alleges that prior to assuming their job responsibilities, each of the five employees agreed that for one year following the termination of employment, he/she they would not solicit Stryker's customers within the territory in which the individual employee was assigned; and also agreed not to disclose Stryker's confidential and trade secret information, or to attempt to induce other Stryker employees to leave Stryker's employ. Stryker FAC ¶ 3. The five employees all resigned from Stryker on April 5, 2014, and

3

allegedly immediately assumed positions with DePuy and/or GSO.[1]  Stryker FAC ¶ 4.
Stryker also alleges that prior to leaving their employment with Stryker, the five employees also solicited at least five Stryker customers to terminate their business with Stryker in favor of DePuy.  Stryker FAC ¶ 6.

Stryker asserts claims of breach of contract and breach of the duty of loyalty against the five former employees; claims of aiding and abetting breach of duty of loyalty, tortious interference with contract, tortious interference with prospective economic advantage (Stryker's workforce), tortious interference with prospective economic advantage (Stryker's customers), and corporate raiding, against DePuy and GSO; and common law unfair competition, against all defendants.  The docket reflects that GSO was served with the summons and FAC on October 23, 2014.

On August 28, 2014, Stryker filed a motion to dismiss or transfer the present action based on the first-to-file rule and the forum-selection clause.  In the alternative, Stryker argues that the court should decline to exercise jurisdiction under Brillhart or abstain under Colorado River, or should stay the case pending resolution of the New Jersey action.

**DISCUSSION**

A.  Dismissal/Transfer Under the First-to-File Rule

Stryker seeks dismissal or transfer under the "first-to-file rule."  Under the first-to-file rule, a district court may decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.  Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982); see also Apple Inc. v. Psystar Corp., 658 F.3d 1150, 1161 (9th Cir. 2011).  "The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." Church of Scientology of Cal. v. U.S. Dep't of Army, 611 F.2d 738, 750 (9th Cir. 1979).  A federal district court has discretion to dismiss, stay, or transfer a case to

---

[1] DePuy states in the New Jersey action that the five former Stryker employees have no "employee" relationship with either DePuy or GSO, but rather are independent contractors who have entered into agreements allowing them to distribute DePuy and/or GSO products.  GSO makes the same assertion in its opposition to the present motion.

4

another district under the first-to-file rule. Alltrade, Inc. v. Uniweld Prods. Inc., 946 F.2d 622, 628 (9th Cir. 1991).

The prerequisites for application of the doctrine are (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues. Alltrade, 946 F.2d at 625; Schwartz v. Frito-Lay N. Am., 2012 WL 8147135, at *2 (N.D. Cal. Sept. 12, 2012); Inherent.com v. Martindale-Hubbell, 420 F.Supp. 2d 1093, 1097 (N.D. Cal. 2006). The two actions need not be identical; rather, it is satisfied if the actions are "substantially similar." See Inherent.com, 420 F.Supp. 2d at 1097; see also Herrera v. Wells Fargo Bank, 2011 WL 6141087 at *2 (N.D. Cal. Dec. 9, 2011).

The court finds that the factor of "chronology" is met because the New Jersey case was filed in May 2014, and this case was filed in July 2014. It is true that GSO was not added as a defendant in the New Jersey case until after this case was filed. Nevertheless, the allegations against GSO in the New Jersey case clearly relate back to the date the original complaint was filed.

The factor of "similarity of parties" is met because the parties are substantially similar. Stryker and GSO are parties in both cases, although the New Jersey case also includes the former employees and DePuy as defendants.

The factor of "similarity of issues" is also met. A case is "substantially similar" if it "rest[s] on identical factual allegations and assert[s] identical or analogous causes of action." Dist. Council 37 Health & Sec. Plan v. McKesson Corp., 2006 WL 1305235, at *1 (N.D. Cal. May 11, 2006). Ultimately, both cases raise issues regarding the validity and enforceability of the employment agreements between Stryker and the former employees.

In the New Jersey case, Stryker alleges that by leaving Stryker and going to work for GSO and DePuy, and by soliciting Stryker's customers, the former employees breached the employment agreements and breached their duty of loyalty to Stryker; and also alleges that GSO and DePuy "aided and abetted" the employees' breach of the duty of loyalty. In this case, GSO seeks a judicial declaration that the noncompete provisions in the employment agreements (which Stryker, in the New Jersey action, asserts were breached)

5

are invalid under California law.  The facts, witnesses, discovery, and arguments will be nearly, if not exactly, the same in both actions.  Although the causes of action are not identical, the actions themselves are "substantially similar."

Nevertheless, there is merit to GSO's argument that the case should not be transferred if the New Jersey court does not have personal jurisdiction over GSO.  However, there is no clear argument on this issue, and, in any event, this court cannot make a determination as to whether there is personal jurisdiction over GSO in New Jersey for purposes of the New Jersey action.  Accordingly, while the Stryker has established the three required factors, the court must DEFER ruling on the motion to transfer under the first-to-file rule until the pleadings in the New Jersey action are settled.

B.    Dismissal/Transfer Based on Forum-Selection Clause

Stryker seeks dismissal or transfer based on the forum-selection clause in the employment agreements.  Under Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, __ U.S. __, 134 S.Ct. 568 (2013), the appropriate mechanism when seeking transfer based on a forum-selection clause is a motion under the doctrine of forum non conveniens, which is analyzed under the factors applicable to a motion to transfer under 28 U.S.C. § 1404(a).  Id. at 580.  Under § 1404(a), the district court may transfer a civil action "for the convenience of parties and witnesses [and] in the interest of justice . . . to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).

In the typical case involving transfer for the convenience of parties and witnesses, the district court must first determine whether the case could have been brought in the forum to which the transfer is sought.  28 U.S.C. § 1404(a); Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985).  If venue would be appropriate in the transferee court, then the court must make an "individualized, case-by-case consideration of convenience and fairness."  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000)

Among the factors that the court may consider in deciding whether a transfer is appropriate are (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice

6

of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling nonparty witnesses; (8) the ease of access to sources of proof and (9) any relevant public policy of the forum state. Id. at 498-99 (citing Stewart, 487 U.S. at 29-31). Courts may also consider, "the administrative difficulties flowing from court congestion and [the] local interest in having localized controversies decided at home." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

However, where the parties have agreed to a forum-selection clause, a motion to enforce the clause should be denied "[o]nly under extraordinary circumstances unrelated to the convenience of the parties." Atlantic Marine, 134 S.Ct. at 581. Because parties who agree to a particular forum are deemed to have waived the right to challenge the preselected forum as inconvenient or less convenient for themselves, their witnesses, or their pursuit of the litigation, the court should consider only the "public interest" factors – administrative difficulties resulting from court congestion, local interest in having localized controversies decided at home, interest in having trial of diversity case in forum that is home to the applicable law – none of which is likely to weigh in favor of defeating the transfer motion. Id. at 581-82 & n.6.

Stryker argues that the case should be dismissed or transferred to the District of New Jersey, asserting that, notwithstanding that GSO is not a party to the employment agreements, the forum-selection clause is binding on GSO based on Manetti-Farrow v. Gucci Am., Inc., 858 F.2d 509, 514 n.5 (9th Cir. 1998), because GSO's conduct is "closely-related to the contractual relationship."

Ordinarily, a provision in a contract "may not be invoked by one who is not a party to the agreement." Britton v. Co-op Banking Grp., 4 F.3d 742, 744 (9th Cir. 1993) (citation omitted). Thus, the general rule is that a forum-selection clause may be enforced only by and against the parties to the underlying contract. See, e.g., Regents of Univ. of California v. Global Excel Mgmt., Inc., 2010 WL 5175034, at *3 (C.D. Cal. Dec.10, 2010); Rollins v.

7

Maui Dreams Dive Co., 2010 WL 4386755, at *11 (D. Hawai'i Oct. 29, 2010).

However, when the conduct of third parties is "closely related to the contractual relationship" between the signatories to a forum-selection clause, those third parties "should benefit from and be subject to forum selection clauses." Manetti-Farrow, 858 F.2d at 514 n.5 (citing Clinton v. Janger, 583 F.Supp. 284, 290 (N.D. Ill. 1984) (citing Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 202-03 (3d Cir.), overruled on other grounds by Lauro Lines v. Chasser, 490 U.S. 495 (1989)); see also Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 456 (9th Cir. 2007) (holding that a forum-selection clause was binding upon non-signatory defendants when "any transactions between those entities and [the plaintiff] took place as part of the larger contractual relationship" between plaintiff and the signatory defendant).

The cases cited by Stryker – such as Adema Techs., Inc. v. Wacker Chemie AG, 2014 WL 3615799 (N.D. Cal. July 22, 2014); Meras Eng'g, Inc. v. CH20, Inc., 2013 WL 146341 (N.D. Cal. July 9, 2012); and Biotronik, Inc. v. St. Jude Med. S.C., Inc., 2012 WL 3264050 (D.Or. Aug. 5, 2012) – illustrate the application of this rule, and differ from the present case primarily in that GSO is not a co-party in this case with the employee signatories. The court finds, however, that this is not sufficient to bar enforcement of the forum-selection clause under the facts of the case, particularly given that GSO is a co-party with the employee signatories in the New Jersey case. In addition, GSO is suing for declaratory relief and restitution or damages in connection with Stryker's enforcement of the employment agreements; thus, notwithstanding that GSO is not a party to the employment agreements (and therefore not a party to the forum-selection provision), it cannot reasonably say that it can sue under the employment agreements but that it is not bound by the forum-selection clause.

Resolution of GSO's tort claims in this case plainly "relates to interpretation of the contract," Manetti-Farrow, 858 F.2d at 514, because the gravamen of GSO's complaint is that Stryker violated California law by including the noncompete provisions in the employment agreements and by seeking to enforce those provisions. Thus, the "closely-

related" exception applies. As discussed above, non-parties may be subjected to a forum-selection clause where their conduct is closely related to a contractual relationship. See Holland Am., 485 F.3d at 456.

To the extent that the factors enunciated by the U.S. Supreme Court in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15-19 (1972) are applicable – that a forum-selection clause is not enforceable if it is invalid for "fraud or overreaching;" or if enforcement would be unreasonable or unjust because, e.g., litigating in the chosen forum would be so difficult that the party opposing transfer would effectively be denied his day in court; or if enforcement would contravene the public policy of the forum in which the suit is brought – the court finds that they do not bar enforcement of the forum selection clause.[2]

There is no evidence here of fraud or overreaching, and no showing that GSO would effectively be denied its day in court if the case were transferred to the District of New Jersey. As for the third factor, GSO asserts that transfer to New Jersey would violate California's public policy against non-compete agreements. However, transfer to New Jersey would not necessarily mean that California law would no longer apply, and the District of New Jersey is fully capable of interpreting and applying California law where appropriate.

Nevertheless, the same problem arguably exists with regard to the motion to transfer based on the forum-selection clause as with the motion to transfer based on the first-to-file rule. That is, it would be futile for the court to transfer the case to a district where the court lacks personal jurisdiction over GSO. Accordingly, the court will DEFER ruling on this part of the motion until the pleadings in the New Jersey case are settled.

---

[2] The Court in Atlantic Marine did not specifically address what circumstances would be sufficiently "extraordinary" to warrant declining to enforce a forum-selection clause, nor did it directly consider whether the Bremen factors still apply (except that it did say that the analysis under § 1404(a) presupposes a "valid" forum-selection clause, see id., 134 S.Ct. at 581 n.5, and that any inconvenience caused by litigating in the contractual forum was foreseeable at the time of contracting, id. at 582). To date, two judges in this district have found that to the extent the Bremen factors implicate "private interests," such as convenience, the court cannot consider them, in line with Atlantic Marine. See Monastiero v. appMobi, Inc., 2014 WL 1991564 at *5-6 (N.D. Cal. May 15, 2014); see also Adema Techs., Inc. v. Wacker Chemie AG, 2014 WL 3615799 at *5 (N.D. Cal. July 22, 2014).

9

C.   Abstention/Stay

Stryker requests that the court decline to exercise jurisdiction over the claim for declaratory relief under Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942), and dismiss the claims under § 16600 and § 17200 for failure to state a claim; or in the alternative, that the court stay the case under Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), or under its inherent power.

The motion is DENIED.  Under the discretionary Brillhart doctrine, the district court may decline jurisdiction over a declaratory judgment action in federal court when another proceeding is pending in state court in which all the matters in controversy between the parties can be fully adjudicated.  See Brillhart, 316 U.S. at 495; see also Wilton v. Seven Falls Co., 515 U.S. 277 (1995).  Under the Brillhart doctrine, district courts appropriately avoid determining state law when state and federal cases raise the same "precise state law issues," state law provides the rule of decision, and the federal case involves an area of law expressly left to the states.  Continental Cas. Co. v. Robsac Indus., 947 F.2d 1367, 1371 (9th Cir. 1991).

Here, the court finds no basis for Brillhart abstention.  While some district courts have applied the Brillhart doctrine in cases with two parallel federal actions, see, e.g., Schmitt v. JD Edwards World Solutions Co., 2001 WL 590039 (N.D. Cal. 2001), Qualcomm, Inc. v. GTE Wireless, Inc., 79 F.Supp. 2d 1177, 1179 (S.D. Cal. 1999), several of the justifications for Brillhart abstention are absent when the parallel case is in federal rather than state court.  See, e.g., Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1367 (9th Cir. 1991).  If both cases are pending in federal court and there is no parallel state court case, there is no question of federal and state courts deciding the same issue unnecessarily, nor is there a risk of forum shopping by parties seeking to avoid state courts that would otherwise hear their claims.  See id.  Moreover, the Brillhart doctrine is applicable only to claims under the Declaratory Judgment Act.

In the present case, GSO has alleged causes of action under § 16600 and § 17200 in addition to the claim for declaratory relief.  Stryker has moved to dismiss the § 16600

10

and § 17200 claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. However, in light of the findings regarding the first-to-file rule and the forum-selection clause, the court also DEFERS ruling on the motion to dismiss those two claims.

A stay under Colorado River is also not warranted. Federal courts may stay a case involving a question of federal law in the interest of "wise judicial administration," where a concurrent state action is pending in which the identical issues are raised. Colorado River, 424 U.S. at 817-18. A stay under Colorado River is not strictly a matter of "abstention," but rather is based on a concern for conservation of judicial resources. Id.

Here, Colorado River is not applicable for two reasons. First, there is no parallel state action which will dispose of "all or an essential part of the federal suit" so as to make a stay appropriate. See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 10 n.1 (1983); see also id. at 28 ("When a district court decides to dismiss or stay under Colorado River, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."). Second, no claim raises any question of federal law.

## CONCLUSION

In accordance with the forgoing, the court DEFERS ruling on the motion to transfer pursuant to the first-to-file rule; DEFERS ruling on the motion to transfer based on the forum-selection clause; DENIES the motion for Brillhart abstention; DEFERS ruling on the motion to dismiss the § 16600 and § 17200 claims for failure to state a claim; and DENIES the motion to stay under Colorado River.

The court orders, pursuant to its inherent power, that the case be STAYED until the pleadings are settled in the case pending in the District of New Jersey. A district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North Am. Co., 299 U.S. 248, 254 (1936); see also Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005).

The parties shall advise the court as soon as GSO is dismissed from the New Jersey

11

action, or as soon as it files an answer. If GSO files an answer and counterclaim, the parties shall advise the court as soon as Stryker has answered the counterclaim.

**IT IS SO ORDERED.**

Dated: October 31, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge